```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
```

ACORNE PRODUCTIONS, LLC and
SHANT MARDIROSSIAN,

                                           **MEMORANDUM & ORDER**

                Plaintiffs,        14-CV-2179 (KAM)

    -against-

ZAREH TJEKNAVORIAN and ALINA
TJEKNAVORIAN,

                Defendants.

```
-------------------------------X
```

**MATSUMOTO, United States District Judge**:

        On March 12, 2014, plaintiffs Acorne Productions, LLC and Shant Mardirossian ("plaintiffs") commenced this case in Supreme Court of the State of New York, Kings County, alleging various New York state law causes of action against Zareh Tjeknavorian and Alina Tjeknavorian ("defendants") in connection with defendants' alleged failure to deliver a film they had agreed to create about the Armenian Genocide. (*See generally* Am. Compl., ECF No. 1, at 67.) On April 7, 2014, defendants removed the case to federal court asserting that plaintiffs' claims arise under the Copyright Act. (Notice of Removal, ECF No. 1, at 1.) In addition, following removal, defendants answered plaintiffs' amended complaint and asserted counterclaims for a declaratory judgment and for breach of

contract.  (Defs. Am. Answer & Counterclaims ("Defs. Am. Answer") ¶¶ 185-203, ECF No. 13.)

Presently before the court is plaintiffs' motion to remand the instant case to New York state court and for attorneys' fees and costs.  Plaintiffs argue that this court does not have jurisdiction over the parties' claims.  (*See* Pls. Mot. to Remand, ECF No. 16.)  Defendants oppose the remand.  The court heard oral argument on the motion, at the parties' request, on June 17, 2014.  For the reasons set forth below, the plaintiffs' motion to remand is granted and the case is remanded.  Plaintiffs' motion for attorneys' fees is denied.

**BACKGROUND**

This case involves a dispute about whether the parties adhered to their agreement to produce a film about the Armenian Genocide and the work of the humanitarian organization Near East Relief.  Plaintiff Mardirossian is a board member and chairman of the Near East Foundation ("NEF"), which succeeded Near East Relief, as well as the sole member of Acorne Productions, LLC.  Defendants are filmmakers.  (Am. Compl. ¶¶ 6-9, 16.)

The parties entered into an agreement in October of 2009 regarding the production of a film about Near East Relief's work and the role of the United States during the Armenian genocide.  (Am. Compl. ¶¶ 21, 22(b); Defs. Am. Answer ¶¶ 21, 22(b), 133; Pls. Answer to Defs. Counterclaims ("Pls. Answer") ¶

2

133, ECF No. 18.) The parties concur that they, at least initially, entered into an oral contract. (*See* Defs. Am. Answer ¶ 145; Pls. Answer ¶ 145 (stating that, in October 2009, plaintiff Mardirossian and the defendants entered into an oral contract).) Plaintiffs state, however, that elements of their agreement with defendants were memorialized in additional writings, including emails and a "Treatment" for the film provided by defendants to Mr. Mardirossian. (*See* Am. Compl. ¶ 21; Defs. Am. Answer ¶ 21; *see also* Pls. Reply Mem. at 4, ECF No. 21.) It is undisputed that the parties agreed that Mardirossian or Acorne would pay defendants $5,000 per month, plus expenses, and would provide filmmaking equipment for use by defendants in exchange for the making of a feature-length documentary film by defendants. (Am. Compl. ¶ 22(a)-(c); Defs. Am. Answer ¶¶ 22(a)-(c), 146; Pls. Answer ¶ 146.) According to plaintiffs, the parties also agreed to a funding limit of $150,000 after which the parties would cooperate in seeking additional funding, and that the film would be finished and released before the 100th anniversary of the Armenian Genocide, April 25, 2015. (Am. Compl. ¶¶ 22-23.) Defendants aver, however, that they never agreed to a funding limit or a specific due date for the film, but admit that Mr. Mardirossian informed them that he wanted to release the film before April 2015. (*See* Defs. Am. Answer ¶¶ 22-23, 148-49, 161, 169; Pls. Answer ¶¶ 161,

169.) As previously noted, a treatment for the film was provided by defendants to Mardirossian, describing the film's themes and possible interview subjects. (Am. Compl ¶ 21 and Ex. A; Defs. Am. Answer ¶ 21.) The treatment was not signed by the parties and does not discuss rights to the film. (*Id.*)

Between January 2010 and April 2012, defendants worked on the film and were in regular communication with plaintiffs. (Am. Compl. ¶ 27; Defs. Am. Answer ¶ 27.) In May of 2012, the parties met to discuss the progress of the film. Plaintiff Mardirossian recalls informing defendants that the previously agreed to funding limit for the film had been exceeded and that his contributions to the film would cease on June 30, 2012. The parties agree that Mr. Tjeknavorian agreed to Mr. Mardirossian's request to prepare a marketing package, operating budget, and outline for the film. (Am. Compl. ¶¶ 32-34; Defs. Am. Answer ¶¶ 32-34.) Defendants allege, and plaintiffs deny, that Mardirossian informed them with no advance warning that he would no longer fund the film after June 30, but that he in fact stopped making payments on May 29, 2012. (Defs. Am. Answer ¶¶ 161, 163; Pls. Answer ¶¶ 161, 163.) Defendants further allege, and plaintiffs deny, that, for the period plaintiffs funded the film, plaintiffs missed seven monthly payments and failed to pay for expenses during 2012 and that, despite the cessation of

4

plaintiffs' funding, defendants continued to work on the film. (Defs. Am. Answer ¶¶ 164, 166-67; Pls. Answer ¶¶ 164, 166-67.)

Also in May of 2012, the parties agreed that defendants would create a marketing package, in order to attract additional donors. (Am. Compl. ¶ 33; Defs. Am. Answer ¶ 33.) Defendants agreed to provide an operating budget and film outline to Mardirossian, but never provided those materials, despite numerous requests. (*See* Am. Compl. ¶¶ 33, 43, 45-47 (describing requests for an operating budget and film outline on April 17, 2013, June 20, 2013, and September 1, 2013).) Defendants admit that they agreed to prepare these materials and anticipated being able to do so by May of 2013, but they never in fact provided the budget or outline to plaintiffs. (Defs. Am. Answer ¶¶ 33, 35, 42, 44, 46, 160.)

On November 15, 2012, Mardirossian proposed that the parties enter into a written agreement and that plaintiffs would resume funding the film if defendants met the conditions of the agreement. (Am. Compl. ¶¶ 38-39; Defs. Am. Answer ¶¶ 38-39.) Mr. Tjeknavorian agreed in principle to enter into a written agreement, and Mr. Mardirossian provided a draft agreement to defendants in February of 2013. (Am. Compl. ¶ 39, Ex. B (copy of draft "Producer Agreement"); Defs. Am. Answer ¶¶ 39, 176; Pls. Answer ¶ 176.) The draft "Producer Agreement" provides that the copyright to the film would be owned by Acorne. (Am.

5

Compl. Ex. B ¶ 7.) Defendants did not agree with all the terms of the draft contract, and, therefore, did not sign it. (Defs. Am. Answer ¶ 178.) Defendants allege, and plaintiffs deny, that defendants instead informed Mardirossian that they would sign a mutually agreeable contract when they had completed the marketing package. (Defs. Am. Answer ¶ 178; Pls. Answer ¶ 178.)

On November 4, 2013, plaintiffs sent a letter to defendants, attached to the Amended Complaint as Exhibit C, stating that, due to defendants' failure to meet deadlines and present a budget, outline or preview of the film, plaintiffs no longer had confidence in defendants' ability to produce the film. (Am. Compl. ¶ 48 and Ex. C.) Plaintiffs demanded that defendants return "all equipment, documents, reference materials, film footage, and versions of the Documentary and a complete inventory of the products of work, [as well as] a full detailed accounting" and that defendants respond to the letter by November 15, 2013. (*Id.* Ex. C.) Defendants informed plaintiffs by email on November 14, 2013 that they would be unable to respond to the letter by the following day. (Am. Compl. Ex. D.) Defendants state that they ceased working on the film in November of 2013. (Defs. Am. Answer ¶ 184.) On March 12, 2014, plaintiffs filed an action in Supreme Court in Kings County. (Notice of Removal ¶ 1.)

**DISCUSSION**

There are two issues in dispute between the parties: 1) whether plaintiffs' claims arise under the Copyright Act and, therefore, whether this court has exclusive jurisdiction over the case based on those claims;[1] and 2) whether, even if plaintiffs' claims do not arise under the Copyright Act, defendants' counterclaims for declaratory judgment and breach of contract vest this court with jurisdiction. For the reasons stated below, the court finds that neither plaintiffs' claims nor defendants' counterclaims arise under the Copyright Act and that this court lacks jurisdiction over the instant case. Therefore, plaintiffs' motion to remand is granted.

**I. Standard of Review on Motion for Remand**

Following the removal of an action to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Defendants bear the burden of demonstrating that federal subject matter jurisdiction exists. *See, e.g.*, *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (citing, *inter alia*, *United Food & Comm. Workers Union, Local 919, AFL-CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994))

---

[1] There is no dispute that plaintiff Mardirossian and both defendants are all citizens of New York and thus that there is no diversity jurisdiction pursuant to 28 U.S.C. § 1332 in this case. (*See* Am. Compl. ¶ 10; Defs. Am. Answer ¶ 10.)

("On a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." (internal quotation marks omitted)). "Unless that burden is met, the case must be remanded back to state court. At [the motion to remand] stage . . . , the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise." *Id.* (quoting *Bellido-Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y 2000)). Therefore, in the context of a motion to remand, "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 325 (S.D.N.Y. 2007) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

**II. Whether Plaintiffs' Claims Arise Under the Copyright Act**

Having reviewed the Amended Complaint, as well as the parties' briefs and the arguments made before the court on June 17, 2014, the court finds that plaintiffs' claims do not arise under the Copyright Act. Therefore, this court lacks subject matter jurisdiction over plaintiffs' claims.

    a. <u>Legal Standard for Federal Jurisdiction Based on Copyright Claims</u>

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized

by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Congress has mandated that the federal courts have exclusive jurisdiction over actions arising under the Copyright Act. 28 U.S.C. § 1338(a) ("district courts . . . have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights.").

The mere fact that "a case concerns a copyright does not necessarily mean that it is within the jurisdiction of the federal district court," however. *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46 (2d Cir. 2002); *see also Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000) ("Whether a complaint asserting factually related copyright and contract claims 'arises under' the federal copyright laws for the purposes of [28 U.S.C.] Section 1338(a) poses one of the knottiest procedural problems in copyright jurisprudence." (internal quotation marks and citation omitted)). The well-established test for determining whether a case arises under the Copyright Act was first articulated by the Second Circuit in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964). *See Bassett*, 204 F.3d at 349-50 (reaffirming the applicability of the *T.B. Harms* test in the Second Circuit and noting that the

9

test "has been adopted by all the circuits that have considered the question [of] whether a suit arises under the Copyright Act . . ., if the disputed issues include non-copyright matters."). Under the *T.B. Harms* test, "a suit 'arises under' the Copyright Act if: (1) 'The Complaint is for a remedy expressly granted by the Act, e.g. a suit for infringement or for the statutory royalties for record reproduction;' or (2) 'The Complaint asserts a claim requiring construction of the Act.'"[2] *Cohen v. Versatile Studios, Inc.*, No. 13-CV-8280, 2014 WL 1584055, at *2 (S.D.N.Y. Apr. 21, 2014) (quoting *Bassett*, 204 F.3d at 349).

b. Application to Plaintiffs' Claims

In their Amended Complaint, plaintiffs allege the following claims under state common law: 1) constructive trust; 2) preliminary and permanent injunctive relief; 3) promissory estoppel; 4) quantum meruit; 5) unjust enrichment; 6) negligent misrepresentation; 7) breach of contract; and 8) an action for an accounting. (Am. Compl. ¶¶ 56-114.) Plaintiffs' requested relief includes: the creation of a constructive trust consisting of the film, any equipment, notes and other relevant materials, and the transfer of the corpus of that trust to plaintiffs; an injunction requiring the delivery of the completed film and

---

[2] A suit may also arise under the Copyright Act if "a distinctive policy of the Act requires that federal principles control the disposition of the claim;" however, the Second Circuit called this basis for jurisdiction "more doubtful[]" and noted that the "general interest that copyrights . . . should be enjoyed by their true owner is not enough to meet this last test." *T.B. Harms*, 339 F.3d at 828.

10

related materials to plaintiffs; a judgment ordering the delivery of the film and related materials to plaintiffs, including the assignment of the copyrights, or, in the alternative, an award of compensatory damages; a complete accounting; and reasonable attorneys' fees and costs. (*Id.* at 23-26.)

None of plaintiffs' claims meet the *T.B. Harms* test for causes of action that arise under the Copyright Act. First, none of the remedies plaintiffs seek is expressly provided for in the Act. *See Bassett*, 204 F.3d at 348 (citing 17 U.S.C. §§ 502-05) (noting that injunctive relief to restrain infringement of a copyright, impoundment remedies, statutory damages, and attorney's fees and costs are remedies expressly provided by the Copyright Act). Second, plaintiffs' claims do not necessitate construction of the Act; instead, they require interpretation of the parties' agreement to determine whether defendants have met or breached their obligations under that agreement.

Defendants argue that plaintiffs' claims, while ostensibly state law causes of action, nonetheless arise under federal copyright law because plaintiffs seek ownership of the rights to the film. The Second Circuit has made clear, however, that "if [a] case concerns a dispute as to ownership of a copyright, and the issue of ownership turns on the

interpretation of a contract, the case presents only a state law issue." *Jasper*, 314 F.3d at 46 (citing *T.B. Harms*, 339 F.2d at 826); *see also Estate Examinations Co., Inc. v. ECG Enters., Inc.*, No. 06-CV-3024, 2006 WL 3248003, at *4 (E.D.N.Y. Nov. 7, 2006) ("Where disputes arise under an agreement between parties, resolution depends on state contract law, not the Copyright Act."). Any question of ownership implicated by plaintiffs' common law claims can be resolved through interpretation of the parties' agreement under state law. As such, plaintiffs' claims do not requirement interpretation of the Copyright Act and this court lacks federal question jurisdiction over those claims.

### III. Whether Defendants' Counterclaims Arise Under the Copyright Act

Defendants have brought counterclaims for breach of contract and for a declaratory judgment that defendants are owners of the copyright. For the reasons set forth below, defendants' counterclaims do not arise under the Copyright Act, and the court, therefore, lacks jurisdiction over the counterclaims.

#### a. Legal Standard for Federal Jurisdiction Based on Copyright Counterclaims

Generally, "the presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule. That rule provides that federal question jurisdiction exists only when the plaintiff's own cause of action is based on

federal law, and only when plaintiff's well-pleaded complaint raises issues of federal law." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) (internal citations omitted). In 2011, however, Congress enacted the Leahy-Smith America Invents Act ("AIA"), which permits "*any party* [who] asserts a claim for relief arising under any Act of Congress relating to . . . copyrights" to remove the action to district court. 28 U.S.C. § 1454(a), (b)(1) (emphasis added); *see also Andrews v. Daughtry*, No. 13-CV-408, 2014 WL 184398, at *3 (M.D.N.C. Jan. 15, 2014) (noting that this provision of the AIA was enacted in response to the Supreme Court's decision in *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826 (2002), which held that a counterclaim could not form the basis for federal question jurisdiction).[3] Defendants did not invoke 28 U.S.C. § 1454 at the time they removed plaintiffs' complaint and, instead, relied only on the general removal statute, 28 U.S.C. § 1441 and the procedures provided by 28 U.S.C. § 1446.

If defendants' counterclaims, which were asserted after removal, arise under the Copyright Act, this court would

---

[3] The scope of section 1454 has not yet been discussed by the Court of Appeals for the Second Circuit or by any district court in New York. All district courts that have interpreted this provision of the America Invents Act have concurred, however, that the statute permits removal of copyright or patent counterclaims. *See, e.g.*, *Inselberg v. N.Y. Football Giants, Inc.*, No. 14-CV-1317, 2014 WL 2763464, at *7 n.7 (D.N.J. June 18, 2014); *Mirowski Family Ventures, LLC v. Boston Scientific Corp.*, No. 13-CV-2627, 2014 WL 2574615, at *4 (D.Md. June 5, 2014); *Daughtry*, 2014 WL 184398, at *3; *Univ. of Ky. Research Found. v. Niadyne, Inc.*, No. 13-CV-16, 2013 WL 5943921, at *5 (E.D.Ky. Nov. 5, 2013).

13

have jurisdiction over the counterclaims, and could exercise supplemental jurisdiction over plaintiffs' claims. *See* 28 U.S.C. § 1454(d)(1) ("If a civil action is removed solely under this section, the district court" "shall remand all claims that are neither a basis for removal under subsection (a) nor within the original or supplemental jurisdiction of the district court").

  b. <u>Application to Defendants' Counterclaims</u>

As previously noted, after the removal of plaintiffs' action, defendants asserted counterclaims for (1) a declaratory judgment that defendants are the sole owners of materials created in connection with the film and (2) for breach of contract.[4] (Am. Answer ¶¶ 194, 203.) Because the court agrees with the parties that the breach of contract counterclaim does not arise under the Copyright Act, only the declaratory judgment counterclaim will be discussed here. (*See* Tr. of Oral Argument at 36.) The court finds that the declaratory judgment counterclaim does not arise under the Copyright Act and that, consequently, the court lacks jurisdiction over the counterclaim pursuant to 28 U.S.C. § 1454.

---

[4] As noted, defendants' counterclaims were asserted in their Amended Answer, which was filed after removal of the case to federal court. In light of the recent enactment of Section 1454 and the lack of case law interpreting it, even if defendants had invoked § 1454 as a basis for removal, it is doubtful that § 1454 would justify removal based only on the complaint, before the counterclaims were filed. In any event, the court finds that the counterclaims do not arise under the Copyright Act, and, thus, will not address this question.

14

Like plaintiffs' claims, defendants' declaratory judgment counterclaim does not arise under the Copyright Act but, rather, asks the court to parse the terms of the agreement between the parties. The declaratory judgment remedy is not expressly stated in the Copyright Act; it is available by virtue of a separate statute, The Declaratory Judgment Act. *See* 28 U.S.C. § 2201. The counterclaim also does not require interpretation of the Copyright Act because the issue of who owns the copyright is dictated by the parties' agreement, and not a term of the Act. *See, e.g.*, *Merchant v. Levy*, 92 F.3d 51, 55 (2d Cir. 1996) ("Unlike a case where a dispute as to copyright ownership arises under an agreement between the parties, resolution of which depends on state contract law, copyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself." (internal citation omitted)).

Defendants argue, relying on the Second Circuit's decision in *Jasper*, that it will be necessary for any presiding court to determine whether the agreement between the parties constituted a writing sufficient under the Copyright Act to transfer ownership of the copyright.[5] The court finds *Jasper* to

---

[5] In general, copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). An exception to this rule is the "work for hire doctrine." Pursuant to this doctrine, "an employer or other person for whom the work was prepared" is deemed the author for purposes of the Copyright Act and owns the copyright, unless the parties agree otherwise in a signed,

15

be distinguishable, however. In that case, an action for royalties, the issue was whether the "addendum agreeing to a contract that purports to transfer a copyright owner's rights [was] a [17 U.S.C.] Section 204(a) writing," thus requiring interpretation of that section of the Copyright Act. 314 F.3d at 47. The Second Circuit found that *Jasper* was "the rare contract interpretation case that does present a substantial issue as to whether the contract qualifies as a section 204(a) writing." *Id.* But the Second Circuit cautioned "that almost every case involving contract interpretation, appropriate for state court determination, could be recharacterized as . . . appropriate for a federal court simply by framing the issue to be whether the disputed contract qualified as a writing within the meaning of section 204(a)." *Id.*

In the instant case, the dispute involves what the parties agreed to, not the compatibility with, or interpretation of, that agreement within the context of the Act. In this respect, the court finds *T.B. Harms*, where the Second Circuit held that federal jurisdiction did not exist, to be more readily analogous to the instant case. In *T.B. Harms*, it was unclear

---

written agreement. 17 U.S.C. § 201(b). The work for hire doctrine does not apply in this case, however, because the parties agree that the film was not a work for hire. (Defs. Am. Answer ¶ 190; Pls. Answer ¶ 190.) Copyright ownership may be transferred "in whole or in part by any means of conveyance." § 201(d)(1). Pursuant to the Copyright Act, copyright ownership may only be transferred by a written instrument that has been signed by the owner. 17 U.S.C. § 204(a).

whether one of the defendants had validly assigned his interest in the copyright to plaintiff, and plaintiff sought a declaratory judgment that he was a sole owner of the copyright. *See Bassett*, 204 F.3d at 348 (summarizing the background of the *T.B. Harms* decision).

Here, defendants' counterclaim seeks a declaratory judgment that they are the sole owners of all materials relating to the film and monetary damages for their breach of contract claim. Defendants' requested relief is not dependent on or derived from the Copyright Act. As in *T.B. Harms*, none of the claims or counterclaims allege a copyright claim, such as infringement, or otherwise seek relief expressly provided by the Copyright Act. *See T.B. Harms*, 339 F.2d at 828; *see also Bassett*, 204 F.3d at 355. For these reasons, the court finds that defendants' declaratory judgment counterclaim does not arise under the Copyright Act and that this court does not have jurisdiction pursuant to 28 U.S.C. § 1454.

Moreover, the court is unable to find prior federal cases, where, as here, ownership is dictated by the terms of the parties' agreement and a party has sought a declaratory judgment regarding ownership. The court must "construe the removal statute narrowly, resolving any doubts against removability," *Sherman*, 528 F. Supp. 2d at 325, and accordingly grants plaintiffs' motion to remand.

17

## IV. Plaintiffs' Motion for Attorneys' Fees

Plaintiffs have moved for an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Granting this award is within the district court's discretion. *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078, 2014 WL 123488, at *2 (E.D.N.Y. Jan. 10, 2014). The Supreme Court has held, however, that, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

Although the court finds that there is no basis for federal jurisdiction in this case, defendants' rationales for removal were objectively reasonable, particularly given the complexity and uncertainty of the law in this area. Accordingly, plaintiffs' motion for attorneys' fees and costs is denied.

## CONCLUSION

For the foregoing reasons, the court finds that plaintiffs' claims and defendants' counterclaims do not arise under the Copyright Act and that there is no basis for federal jurisdiction in this case. The case is therefore remanded.

Plaintiffs' motion for attorneys' fees is, however, denied.  The Clerk of Court is directed to remand this case to the Supreme Court of the State of New York, Kings County and to close the case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          July 9, 2014

                                    _____/s_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge